Case 7:01-cv-02192-UWC-HGD   Document 15   Filed 03/19/04   Page 1 of 12

FILED
2004 MAR 19 PM 12: 08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| MARCUS LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV-01-C-2192-W |
| | ) | |
| JOHN E. NAGLE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTERED**
MAR 19 2004

MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Marcus Lawson, alleges that his constitutional rights have been violated during his incarceration at the Bibb County Correctional Facility in Brent, Alabama. The *pro se* complaint was filed on August 29, 2001. Plaintiff names as defendants Warden John E. Nagle[1], Director of Classification for the Department of Corrections Paul Whaley,[2] and Commissioner for the Alabama Department of Corrections Michael Haley.[3] Plaintiff seeks injunctive relief and a declaratory judgment.

On May 23, 2002, the court entered an Order for Special Report directing that copies of the complaint filed in this action be forwarded to each of the defendants and requesting that they file a special report responding to the factual allegations of the complaint. On July 22, 2002, the

---

[1] The court notes that plaintiff misspelled defendant Nagle's last name in his complaint. Plaintiff spelled it "Nagel".

[2] It is noted that plaintiff misspelled defendant Whaley's last name in his complaint. He spelled it "Whalen".

[3] In his complaint, plaintiff misspelled defendant Haley's first name. Plaintiff spelled it "Mik".

15

defendants filed their special report attaching documents and the affidavits of defendants Nagle and Whaley. On August 5, 2002, plaintiff filed his response to the defendants' special report. By Order of March 17, 2003, the parties were notified that the special report filed by the defendants would be construed as a motion for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett*

*v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. Plaintiff is currently serving a 40 year sentence for the crimes of Burglary I and Assault (defendant Whaley's affidavit). Plaintiff is deemed a sex offender for classification purposes even though he was acquitted by a jury on the charge of Attempted Rape (plaintiff's complaint page four). The defendants are using a pre-sentence investigation report (P.S.I.) dated September, 1995, and not the official record and case action summary of the trial court to classify plaintiff as a sex offender (plaintiff's complaint page four). The defendants are also using the Department of Corrections Classification Manual which was changed on June 21, 2000, to classify plaintiff as a sex offender (plaintiff's complaint attached page one). During a reclassification hearing held on October 12, 2000, defendant Nagle recommended that plaintiff remain in sex offender status for classification purposes (plaintiff's complaint page three). During the hearing, it was determined that the details of plaintiff's crimes

3

should be considered (defendant Whaley's affidavit). Defendant Nagle sat on the Progress Review Board during the hearing (defendant Nagle's affidavit). It was noted during the hearing that plaintiff did try to take off the victim's pants, which made the offense have a sexual overtone (defendant Nagle's affidavit). Defendant Nagle felt that plaintiff should be classified as a sex offender with the Department of Corrections only (defendant Nagle's affidavit). The classification as a sex offender for Department of Corrections purposes is a part of plaintiff's parole record and will impact decisions regarding whether or not he will be granted parole, receive a lower custody classification, be transferred to work release, or be transferred to an honor camp (plaintiff's complaint attached page one). Plaintiff will not be required to register as a sex offender upon release nor does his offense rise to the standard of Megan's Law (defendant Whaley's affidavit).

## DISCUSSION

### Equal Protection

Plaintiff makes the bare assertion that he has been denied equal protection. In order "[t]o prove an equal protection claim, [a prisoner] must show treatment that was invidiously dissimilar from that accorded other inmates, with no rational basis existing for the difference in treatment." *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987). *See also Clark v. Groose*, 36 F.3d 770, 772 (8th Cir. 1994), *cert. denied*, 131 L.Ed.2d, 115 S.Ct. 1362 (1995). The Equal Protection Clause has long been limited to instances of purposeful or intentional discrimination rather than erroneous or even arbitrary administration of authority. *See Snowden v. Hughes*, 321 U.S. 1, 8 (1944). "Absent any allegation of a discriminatory purpose, a mere failure of those who administer the law to treat equally all persons who violate the law does not constitute a denial of the constitutional right to equal

protection." *Harrington v. United States*, 673 F.2d 7, 11 (1st Cir. 1982) (citations omitted). *See also E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988).

Sex offenders, as a class, can be denied work release and lower custody classifications without violating the equal protection clause. *See generally Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Mahfouz v. Lockhart*, 826 F.2d 791, 794 (8th Cir. 1987); *Hendking v. Smith*, 781 F.2d 850, 851-52 (11th Cir. 1986). Plaintiff has not offered any evidence to support his conclusory claim that he has been denied equal protection. Plaintiff has not identified any prisoners who have been accorded benefits he has been denied. Furthermore, he has not set forth any facts establishing that any of the defendants have acted with a discriminatory purpose. "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination." *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988) (*quoting Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 597 (11th Cir. 1987)), *cert. denied*, 488 U.S. 1004 (1989). The defendants are entitled to summary judgment on this claim.

<u>Due Process</u>

The Eleventh Circuit recognized in *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999) that an inmate has a liberty interest in not being branded as a sex offender. The court reasoned that the "stigmatizing effect" of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause. *Kirby*, at page 1292. Consequently, "[a]n inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." *Id*. It is undisputed in the present case that the plaintiff was not convicted of a sex crime, therefore, he is entitled to the procedural due process protections outlined in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) as a prerequisite to any sex offender classification.

5

In *Wolff, supra*, the United States Supreme Court set forth the due process mandates for a prison disciplinary proceeding where liberty interests are implicated. Under those circumstances, the inmate must (1) be given written notice of the charges and (2) be allowed to call witnesses and present documentary evidence to the extent consistent with institutional safety and correctional goals. Additionally, the *Wolff* court required that the fact-finders issue a written statement indicating the evidence relied upon and the reasons for the disciplinary action taken.

In this case, it is undisputed that the plaintiff was provided advance written notice of the October 12, 2000 hearing to determine his continued classification as a sex offender (Exhibit I attached to plaintiff's complaint Document # 1). In that notice, he was advised of the subject matter of the hearing and of the opportunity to be heard, to call witnesses, and to present documentary evidence at the hearing. The court therefore finds that the defendants have complied with the *Wolff* requirement that the plaintiff be given advance written notice of the charges.

The second *Wolff* requirement is that the inmate be given the opportunity to call witnesses and present evidence at the hearing in a manner that would be consistent with institutional safety and correctional goals. As stated above, the plaintiff was notified of his right to be heard, to call witnesses, and to present documentary evidence. The plaintiff has not asserted that he was completely denied the opportunity to call witnesses or present evidence at the October 12, 2000 hearing. Instead, he contends that the opportunity was not meaningful, because the only documentation he had was his trial transcript and, since he was unable to make copies, he would have had to forfeit the transcript (plaintiff's response to the special report page 3 Document # 11). The *Wolff* court recognized that prison officials have the "extraordinarily difficult" task of operating correctional institutions which necessarily entails the responsibility for the safety of staff and

inmates. The court was therefore reluctant to extend to prisoners the "unqualified right to call witnesses" in prison disciplinary proceedings. Instead, the court extended to prison officials the "necessary discretion" to place limits on an inmate's right to call witnesses or present documents. *Wolff*, 418 U.S. 566-567.

In the present case, it is undisputed that the plaintiff was apprised of the right to call witnesses and to present documentary evidence. More importantly, the plaintiff has failed to present any evidence that identifies any witness or document which was specifically rejected by the hearing officers. Plaintiff states in his response to the special report that he did not present documentary evidence, because he did not want to lose his trial transcript. Plaintiff does not assert that he asked anyone if he could make copies of the documentary evidence, but his request was denied. Nor does he assert that he made any effort to present the trial transcript as documentary evidence. In addition, the Alabama Department of Corrections 24 Hour Advance Notification Of Pending Classification Review signed by plaintiff on October 7, 2000, indicates that no witnesses were requested (plaintiff's Exhibit I attached to his complaint Document # 1). In any event, the *Wolff* decision makes it clear that the failure to provide a prisoner with unbridled access to witnesses or documents in a disciplinary hearing does not implicate due process. There is nothing in the record which would support a finding that the defendants fell short of the minimum requirements outlined in *Wolff*. Accordingly, the court finds that the undisputed facts establish that the defendants have complied with the second *Wolff* requirement outlined above.

The final due process requirement mandated by the *Wolff* court is that there must be a written statement by the fact-finders as to the evidence relied upon and the reasons for the disciplinary action. It is undisputed that the defendants have issued several written statements which comply

with this requirement. Plaintiff has submitted two of those written statements as exhibits. Plaintiff submitted an Alabama Department of Corrections 24 Hour Advance Notification of Pending Reclassification dated October 6, 2000 and signed by him on October 7, 2000 (plaintiff's Exhibit I attached to his complaint Document # 1). The document informs plaintiff as follows:

> The PSI dated 9/95 revealed that inmate Lawson burglarized the home of the victim, assaulting her with a knife while attempting to rape her. The victim was stabbed in the shoulder, and several fingers were cut after inmate Lawson dropped the knife in an attempt to pull down the victim's panties, and a struggle ensued. Per the new criteria for sex offenses - Para C Section IV of the Classification Manual recommend that inmate Lawson remain in sex offender status, Medium custody, and be awarded the "S" suffix. Based on the changes to the classification manual, dated 6-21-00 pg. 35c-1, "inmates whose convictions may be for other offenses (past or present) but which include details indicating a sex offense occurred in the commission of the crime for which the inmate was convicted" it will be recommended you remain a sex offender for classification purposes.

Plaintiff also submitted a Progress Review Form dated July 2, 2001 (plaintiff's Exhibit B attached to his complaint Document # 1). Plaintiff signed the document July 27, 2001. In the document, it was recommended that plaintiff remain in medium custody at Bibb County Correctional Facility. The justification for the recommendation is as follows:

> APR. Inmate is deemed a sex offender due to an attempted rape in the commission of an assault II. Now serving total term of 40 years. Has an active detainer for Notification only. Good institutional adjustment with disc clear since 7/98. No change recommended. DNA - 7/10/95 @ KCF. RP - Bapt. L/A - PR@Bibb. Classified sex offender 10/00.

The defendants have also submitted written statements which comply with the *Wolff* requirement (Exhibit B attached to the defendants' special report). The document entitled Alabama Department of Corrections - Progress Review Form signed on June 10, 2002 by Odessa King, Classification Specialist, Warden John E. Nagle, and J. Hand, the psychologist or psychologist's associate, clearly sets forth the evidence relied upon by the hearing officers, the final decision arrived at as a result of

the hearing, and the reason for the classification findings.[4] Accordingly, the undisputed facts before the court show that the defendants have complied with this final due process requirement.

Further, although not well articulated, plaintiff makes an additional due process challenge to the classification proceedings at issue here. He contends that he has been denied due process on the basis that he has been classified as a sex offender on constitutionally insufficient evidence. Plaintiff contends that the 1995 PSI relied upon by the defendants to classify him as a sex offender is nothing more than hearsay. In *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the United States Supreme Court addressed the issue regarding the <u>amount</u> of evidence required by due process to support a decision by a prison disciplinary board. In *Superintendent*, the Supreme Court concluded that a governmental decision which results in a loss of liberty interests violates due process only if the decision is not supported by *any* evidence.

> "We hold that the requirements of due process are satisfied if <u>some</u> evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was <u>some</u> evidence from which the conclusion of the administrative tribunal could be deduced...' *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S., at 106, 47 S.Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is <u>any</u> evidence in the record that could support the conclusion reached by the disciplinary board." (emphasis added).

*Superintendent*, 472 U.S. at 455.

The *Superintendent* court recognized that the requirements of due process are "flexible" and that a prisoner's due process interests must be accommodated in the unique setting of a prison where

---

[4] It is noted that the form indicates the plaintiff's refusal to sign.

9

disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been incarcerated for doing so." *Superintendent,* 472 U.S. at 454. Thus, the court fell short of requiring a specified quantum of evidence in prison disciplinary proceedings beyond the "modicum' or "meager" amount needed from which a disciplinary board's decision may be deduced.

In the present case, the undisputed facts establish that the defendants have met the minimum evidentiary requirements outlined in *Superintendent.* It clear that the defendants' classification decision regarding the plaintiff rests on the information found in the PSI which indicates the plaintiff attempted to undo the victim's pants in the course of the burglary and assault II. It therefore cannot be said that the defendants' decision is unsupported by <u>any</u> evidence. Additionally, the constitution does not require that we agree with the conclusion reached by the defendants in this matter, only that their decision is based on <u>some</u> evidence, however meager, upon which we can determine the reason for the decision. *Superintendent*, 472 U.S. at 457. The defendants are entitled to summary judgment on this claim.

In his response to the defendants' special report, plaintiff contends further that his due process rights have been violated because the information contained in the PSI is false. In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the inmate plaintiff, Monroe, was convicted of the murder of Linda Ann Harden. The PSI in Monroe's institutional file indicated that he had raped Ms. Hardin prior to killing her and that he had admitted this fact to the parole officer who prepared the PSI. Based on this information, Monroe was classified as a sex offender and was denied work release. Monroe wrote to the Board of Pardons and Paroles stating that the information contained in the PSI was false and requesting that the PSI be corrected. Although the Board of Pardons and

Paroles determined that the information was, in fact, false, it refused to correct the erroneous statements. The Eleventh Circuit Court of Appeals held that Monroe's due process rights had been violated by the use of *admittedly* false information to classify Monroe as a sex offender and to deny him parole. 932 F.2d at 1441-42. The court made it clear that it was the *knowing* use of the false information that was the gravamen of defendants' actions.

The present case is factually distinguishable from *Monroe* on a number of points. First, there has been no admission by any of the defendants that plaintiff's file contains false information. "[A] plaintiff does not state a due process claim merely by making a conclusory allegation that erroneous information must have been used in the parole[, work release, or classification] determination. Rather, in the absence of an admission by the [defendants] that [they have] relied on false information, the plaintiff must present evidence that his file contains false information." *Greene v. Georgia Pardons and Parole Board*, 807 F.Supp. 748, 754 (N.D. Ga. 1992) (footnotes omitted). The only allegedly false information plaintiff identifies is that the PSI states that he attempted to rape the victim by pulling down her pants and threatening her with a knife. Plaintiff is mistaken. The PSI states that the victim stated that the attacker dropped the knife when he tried to undo her pants. Plaintiff has failed to present any evidence that the victim did not in fact state that the attacker dropped the knife when he tried to undo her pants. It is noted that plaintiff submitted as Exhibit 2 attached to his response to the defendants' special report, what purports to be page 60 of his trial transcript. However, nowhere on the page does the victim state that the PSI falsely states that she stated that the attacker dropped the knife when he tried to undo her pants. Clearly, plaintiff has failed to present evidence that the PSI contains false information. The defendants are entitled to summary judgment on this claim.

11

## CONCLUSION

Accordingly, for the reasons stated above, the Court EXPRESSLY FINDS that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. Therefore, defendants' motion for summary judgment is due to be GRANTED and this action is due to be DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DATED this 18th day of March, 2004.

U. W. CLEMON
CHIEF UNITED STATES DISTRICT JUDGE